# U.S. Department of Justice

# Complaint of Discrimination
*(See instructions on reverse)*

**PRIVACY ACT STATEMENT:** 1. AUTHORITY- The authority to collect this information is derived from 42 U.S.C. Section 2000e-16; 29 CFR Sections 1614.106 and 1614.108. 2. PURPOSE AND USE-This information will be used to document the issues and allegations of a complaint of discrimination based on race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental), sexual orientation or reprisal.

The signed statement will serve as the record necessary to initiate an investigation and will become part of the complaint file during the investigation; hearing, if any; adjudication; and appeal, if one, to the Equal Employment Opportunity Commission. 3. EFFECTS OF NON-DISCLOSURE-Submission of this information is MANDATORY. Failure to furnish this information will result in the complaint being returned without action.

**1. Complainant's Full Name**
Shannon M. Muldrow

**Street Address, RD Number, or Post Office Box Number**
[redacted]

**City, State and Zip Code**
[redacted]

*RECEIVED 2019 OCT 18 P 1:25 OFFICE OF EEO AFFAIRS*

**2. Your Telephone Number (including area code)**
Home: [redacted]
Work: (S) [redacted]

**3. Which Department of Justice Office Do You Believe Discriminated Against You?**
FBI

**B. Street Address of Office**
[redacted]

**C. City, State and Zip Code**
Tampa, Florida 33609

**4. Current Work Address**
[redacted]

**A. Name of Agency Where You Work**
FBI

**B. Street Address of Your Agency**
935 Pennsylvania Avenue NW

**C. City, State and Zip Code**
Washington, DC 20535-0001

**D. Title and Grade of Your Job**
Special Agent, GS 13 Step 9

**5. Date on Which Most Recent Alleged Discrimination Took Place**

| Month | Day | Year |
|---|---|---|
| 08 | 08 | 2019 |

**6. Check Below Why You Believe You Were Discriminated Against?**

- ☐ Race or Color *(Give Race or Color)* _____
- ☐ Religion *(Give Religion)* _____
- ■ Sex *(Give Sex)*   ☐ Male   ■ Female
  - ☐ Sexual Harassment
- ☐ Age *(Give age)* _____
- ☐ National Origin *(Give National Origin)* _____
- ☐ Disability   ☐ Physical   ☐ Mental
- ☐ Genetic Information
- ☐ Sexual Orientation
- ☐ Gender Identity
- ☐ Reprisal
- ■ Parental Status
- ■ Class Complaint

**7. Explain How You Believe You Were Discriminated Against** *(treated differently from other employees or applicants)* Because of Your Race, Color, Sex (including sexual harassment), Religion, National Origin, Age, Disability (physical or mental), Genetic Information, Sexual Orientation, Gender Identity, Parental Status, or Reprisal. Do not include specific issues or incidents that you have not discussed with your EEO Counselor. *(You may continue your answer on another sheet of paper if you need more space.)*

See attached

**8. What Corrective Action Do You Want Taken on Your Complaint?**

See attached

**9. A) I have discussed my complaint with an Equal Employment Opportunity Counselor and/or other EEO Official.**

DATE OF FIRST CONTACT WITH EEO OFFICE: 09 / 09 / 2019

DATE OF RECEIPT OF NOTICE OF FINAL INTERVIEW WITH EEO COUNSELOR: 10 / 07 / 2019

**B) Name of Counselor**
Diane D. Williams

☐ I Have Not Contacted an EEO Counselor

**10. Date of This Complaint:**

| Month | Day | Year |
|---|---|---|
| 10 | 16 | 2019 |

**11. Sign Your Name Here:**
*Shannon M. Muldrow* (signature)

FORM DOJ-201A
APR. 2011

**Department of Justice**
**Complaint of Discrimination**
**Form DOJ-201A**
**APR. 2011**
**Shannon M. Muldrow**

**7. Explain How You Believe You Were Discriminated against (treated differently from other employees of applicants) Because of Your Race, Color, Sex (including sexual harassment), Religion, National Origin, Age, Disability (physical or mental), Genetic Information, Sexual Orientation, Gender Identity, Parental Status, or Reprisal. Do not include specific issues or incidents that you have not discussed with your EEO Counselor. (You may continue your answer on another sheet of paper if you need more space.**

<u>Introduction</u>

SA Muldrow is filing an EEO complaint for failure to be promoted to a GS-14 Supervisory Special Agent (SSA) based on discrimination because of sex and parental status.

First, the Local Career Board (LCB) decision to un-rank SA Muldrow following an interview conducted by the LCB, after initially ranking SA Muldrow #1 on the basis of her 954, was the result of discrimination on the basis of her sex and parental status.

Second, the LCB's decision to repost the job as non-stationary position had a disparate impact on SA Muldrow.

Third, the practice of the FBI in allowing promotions to be posted as non-stationary has a disparate impact on female FBI agents in the field who are parents and cannot relocate to FBIHQ due to their family responsibilities.

*It should be noted that some of the allegations in SA Muldrow's informal EEO have been removed from SA Muldrow's formal EEO complaint as SA Muldrow was advised by the EEO counselor and FBI OGC Employment Law attorney that although favoritism may be listed in the EEO Notice, it is not a protected class under EEO law via statute or Executive Order. As a result, SA Muldrow has withdrawn those related favoritism claims that were made against SSA Andrew Sekela. Attached as a reference is SA Muldrow's original informal EEO complaint. (Exhibit 1)*

<u>Summary of Initial Posting, 954, Interview, 955, SAMMS Board Results, and Reposting</u>

On May 7, 2019, FBI Tampa posted a Term Field SSA (GS-14) for Tampa's Squad 10, a white collar fraud, civil rights, and public corruption squad supervised by SSA Sekela. A copy of the job posting is attached as Exhibit 2. The job was posted as "Flex." It was SA Muldrow's understanding that the Flex status allowed SA Muldrow, who is located in Tampa Field Office where the vacancy exists, to be considered equally with FBIHQ candidates for this position as a Tier 1 candidate. As a result, her 954 was ranked equally with other FBIHQ candidates applying for this position. A copy of the FBI Tiering Charts is attached as Exhibit 3.

On May 21, 2019, SA Muldrow submitted a 954 for consideration. A copy of SA Muldrow's 954 is attached as Exhibit 4.

1

On July 10, 2019, SA Muldrow was notified that she was selected by the LCB for an interview. Assistant Special Agent in Charge (ASAC) Rehler served as chairperson of the Local Career Board (LCB), with SSA Sekela and two other supervisors comprising the LCB. Although SA Muldrow was not told how many candidates were interviewed, SA Muldrow understood that the LCB interviewed the top three ranked candidates.

On July 11, 2019, at 1:00 p.m., SA Muldrow interviewed for the Squad 10 SSA position.

On August 8, 2019, SA Muldrow was advised of the SAMMS Board Results over the telephone by ASAC Rehler. SA Muldrow also learned via email that the LCB ranked her #1 prior to the interview. However, following the interviews, the LCB un-ranked SA Muldrow and the other two candidates. As reflected by the FD-955, Special Agent in Charge (SAC) McPherson's recommendation for SA Muldrow was "Yes." The SAMMS Board result dated August 8, 2019, is attached as Exhibit 5.

On August 22, 2019, the same job was reposted "Non-stationary." It is SA Muldrow's understanding that due to the Non-stationary designation, SA Muldrow will no longer be able to compete equally with FBIHQ candidates for this position. According to FBI policy on the tiering of candidates, FBIHQ candidates for this vacancy in the Tampa Division are considered Tier 1. SA Muldrow would be designated as a Tier 2 candidate since she is currently assigned to the field office where the vacancy exists. The new most recent posting for the Squad 10 SSA position is attached as Exhibit 6.

On September 6, 2019, SA Muldrow again applied for the Squad 10 SSA position. As noted above, SA Muldrow will be designated as a Tier 2 candidate and will not be ranked. The SAMMS Board decision for the Tampa Squad 10 SSA position will be announced November 6, 2019.

1. <u>The LCB decision to un-rank SA Muldrow following an interview conducted by the LCB, after initially ranking SA Muldrow #1 on the basis of her 954, was the result of discrimination on the basis of her sex and parental status.</u>

In November of 2018, SA Muldrow applied for the Pinellas Resident Agent (PRA) SSRA position. Based on her ranking, she was also selected to be interviewed by the LCB. Due to SA Muldrow's outstanding interview, it was noted in the LCB justification that SA Muldrow was moved from number six to number four in the final rankings. This LCB was composed of different members than the Squad 10 SSA LCB. Members of this LCB spoke very highly of SA Muldrow and encouraged SA Muldrow to apply for the upcoming Squad 10 SSA position.

In or about January or February 2019, after SA Muldrow was not selected for the PRA SSRA position, she met with ASAC Rehler in her office to discuss how SA Muldrow could be more competitive for the upcoming Squad 10 SSA position. ASAC Rehler told SA Muldrow that she needed to do a Temporary Duty (TDY) Assignment to FBIHQ. SA Muldrow said she would look into it and she later asked SSA Sekela if he would be able to assist her in getting a 30-day TDY in the Public Corruption Unit at FBIHQ. SA Muldrow told SSA Sekela that she would need to find child care for her three children before she committed to doing a 30-day TDY. SA Muldrow told SSA Sekela she would reach back out if she obtained child care for 30 days. Since SA Muldrow was unable to obtain child care for her three children, she did not reach back out to SSA Sekela about doing a 30-day TDY.

On August 8, 2019, ASAC Rehler contacted SA Muldrow on her cellular phone to tell her she was not selected for the Squad 10 SSA position. One of the comments ASAC Rehler made to SA Muldrow on the

2

telephone was that people "make choices." ASAC Rehler said that she understands SA Muldrow had "family commitments," and repeated that people "make choices" and that SA Muldrow had made a choice. ASAC Rehler stated that she told SA Muldrow before the process that she needed leadership experience, and she told SA Muldrow that she needed a TDY at FBIHQ. The clear and unequivocal meaning of ASAC Rehler's comments was that SA Muldrow's family commitments that precluded her from taking a 30-day TDY to FBIHQ, as recommended by ASAC Rehler, constituted a significant factor in SA Muldrow not being awarded the Squad 10 SSA position even though it was not a requirement of the job.

SA Muldrow was very upset with ASAC Rehler's inappropriate and discriminatory comments. SA Muldrow reiterated to ASAC Rehler that she was not able to go to FBIHQ. In fact, ASAC Rehler knew that SA Muldrow was married with children. She also knew that SA Muldrow did not take a TDY to FBIHQ on the basis of her family as ASAC Rehler specifically stated that she understood that SA Muldrow had "family commitments", but she made a choice.

SA Muldrow at no time made any references to her family or family commitments before ASAC Rehler made her "choices" and "family commitment" comments. SA Muldrow never initiated any type of discussion about her family in this telephone conversation, and SA Muldrow never would have brought up her family in this conversation. ASAC Rehler's "choices" and "family commitment" comments were completely out of the blue and shocked SA Muldrow.

SA Muldrow further noted to ASAC Rehler that the agent previously selected in January of 2019 for the PRA SSA position (who is male) had also never done a TDY at FBIHQ. ASAC Rehler responded that it was a different job and a different career board. This comment not only underscores the arbitrary and discriminatory nature of the selection process, but reinforces and reflects a double standard.

After the conversation, SA Muldrow reviewed the LCB justification written by ASAC Rehler (Ex. 3) which stated, "[f]urther, Muldrow's resume reflected limited leadership experience or development." ASAC Rehler's comments about SA Muldrow's family commitment based choices combined with one of ASAC Rehler's justification for un-ranking SA Muldrow demonstrate discrimination on the basis of sex and parental status. The LCB's criticism of SA Muldrow's leadership experience or development stems from SA Muldrow's family-based "choices" and her family responsibilities that limited her ability to do a 30-day TDY prior to the interview for the SSA Squad 10 position or previously. This amounts to improper discrimination based on sex and parental status.

    2. <u>The LCB decision to repost the job as non-stationary position had a disparate impact on SA Muldrow due to her sex and parental status.</u>

During ASAC Rehler's telephone call to SA Muldrow on August 8, 2019, SA Muldrow asked if the job would be reposted. ASAC Rehler told her the job would be reposted, but ASAC Rehler did not know how the job would be reposted the next time. At first SA Muldrow did not understand what ASAC Rehler meant, but then SA Muldrow realized and said to ASAC Rehler that the position was going to be posted as non-flex; making SA Muldrow non-competitive when she re-applied for the position. ASAC Rehler said that she did not know how the position would definitely be reposted.

The FBI Tampa LCB decided to repost this job as non-stationary. This action has a disparate impact on SA Muldrow. Due to her sex and parental status, SA Muldrow cannot take a transfer to FBIHQ in order

to obtain supervisory experience in D.C. Due the FBI rules for non-stationary postings, SA Muldrow cannot compete with candidates applying from FBIHQ for supervisory positions in the Tampa Field Office. The postings as non-stationary essentially prevents SA Muldrow from being promoted in the FBI.

If the LCB had an interest in allowing the most qualified candidates to apply for the job, including the previous #1 ranked candidate, the position would have been again posted as Flex. It is precisely this type of improper promotion practice that the IG Review found to exist in the FBI and other DOJ components. The IG Review, at p. 28, stated:

> Men and women most frequently cited unfairness in the promotions process as an example of bias or inequity, with women most often saying that bias was based on gender. ... "Inequitable application of procedures contributes to FBI's gender inequities. For promotions, it is the 'who you know' factor that will get you promoted and ... gender discrimination [is] a factor in promotions."

3. The practice of the FBI in allowing promotions to be posted as non-stationary has a disparate impact on female FBI agents in the field who are parents and cannot relocate to FBIHQ due to their family responsibilities.

The IG Review ( at page i), stated that "[i]n Human Resources Order DOJ 1200.1, the Department directs every component to take actions to eliminate any policy, practice, or procedure that results in discrimination on the basis of a variety of demographics, including gender." The IG made six recommendations, including that the FBI and other components should "identify and take steps to address barriers to advancement for women within the component and among different job types." *Id.* at 46. In a May 25, 2018, letter, the FBI agreed with all of the recommendations, noting:

> We agree it is important, in order to address the concerns and negative perceptions related to gender equity within the various DOJ law enforcement components, for the FBI to identify and address any barriers for women in hiring and promotion activities.

*Id.* at 80.

One of the clear barriers to female agents being competitive for promotions relates to the posting of supervisory positions as "Non-stationary" and, as evidenced by ASAC Rehler's comments and actions in this case, requiring female agents to do TDYs at FBIHQ as a condition of promotion. As noted above, having FBIHQ experience was not required for the male agent awarded the PRA SSA position, but was required of the female agent in the same division applying for an SSA job only months later. This barrier in promotions is based on the realities of the workplace, family commitments, and parental status of female agents, such as SA Muldrow.

This disparate impact is supported by clearly established by labor statistics. A review of the Bureau of Labor Statistics data summarized in its April 18, 2019, News Release reveals that the vast majority of fathers with children under age 18 (93.3 percent) participating in the labor force. The same is not true for mothers, who are employed at a much lower rate. Similarly, Table 4 of the News Release notes that in married couple families in 2018, only 5.8% of the time did the mother and not the father work. By contrast, in 24.1% of married families, only the father worked. A copy of the News Release is attached as Exhibit 5. Anecdotal evidence and personal experience by SA Muldrow over her career in the FBI reflects

the disparate impact on female agents with children due to established FBI policy with respect to job postings and consideration of FBIHQ experience in promotions.

**8.      What Corrective Action Do You Want Taken on Your Complaint?**

SA Muldrow seeks the following corrective action:

1. Expungement of negative comment derived from EEO violations in LCB justification for un-ranking SA Muldrow.
2. SA Muldrow be awarded the Squad 10 SSA position in Tampa.
3. In the alternative, SA Muldrow be awarded a GS-14 position in the Tampa Division commensurate with her criminal experience with back pay for a GS-14 beginning August 8, 2019.
4. SA Muldrow be awarded damages no less than the statutory maximum of $300,000.00 for emotional distress resulting from these EEO violations.
5. The FBI change its policy and eliminate non-stationary postings in order to allow all candidates to compete for promotions in the FBI based solely on merit.

5