UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHANNON MULDROW,

Plaintiff,

v.                                          Case No: 8:21-cv-2674-KKM-JSS

MERRICK GARLAND,
Attorney General of the United States,

Defendant.
_____

## ORDER

FBI Special Agent Shannon Muldrow sued the Attorney General under Title VII. She advances an intentional discrimination claim, a disparate impact claim, and a retaliation claim. The Attorney General moves to dismiss part of Muldrow's operative complaint. The Court partially grants the motion because Muldrow fails to adequately allege a disparate impact claim and *sua sponte* strikes Muldrow's intentional discrimination and retaliation claims as an impermissible shotgun pleading.

I. BACKGROUND

Special Agent Shannon Muldrow joined the FBI's Tampa Field Division in 2000 and has remained with the FBI for the last 22 years. (Doc. 52 ¶¶ 20–31.) Starting in 2019, Muldrow alleges that the FBI began discriminating against her.

Muldrow's first grievance occurred on August 7, 2019—the day she was told that she was not selected for the Squad 10 Supervisory Special Agent position. (*Id.* at ¶ 70.) Muldrow claimed that another male candidate was improperly selected instead of her. (*Id.* at ¶ 71.) Although the FBI reposted the position on August 22, 2019, the position was reposted as "non-stationary," (*Id.* at ¶ 75.), meaning that applicants from FBI Headquarters would be given automatic preference over applicants from field offices. Muldrow alleges that the FBI intentionally reposted the position as "non-stationary" to disadvantage her and award the position to a pre-selected male applicant. (*Id.* at ¶ 76). A couple months later, Muldrow filed a formal EEO complaint alleging that FBI promotion policies disparately impact women. (Doc. 66-1.)

Muldrow contends that this circumstance is not isolated. She argues that the FBI's facially neutral practice of posting "non-stationary" positions has an unlawful disparate impact on female applicants. (Doc. 52 ¶¶ 86–109). When a position is labeled "non-stationary," the application preferences individuals applying from FBI Headquarters and disfavors those working in a field office. Muldrow alleges that women with children face more difficulty than men in leaving to "work for extended periods of time" in Washington, D.C. (*Id.* at ¶ 97.) She explains that, in the United States labor force, working women are more likely than men to be married to a spouse that also works. (*Id.* at ¶ 98 (citing data from the United States Bureau of Labor Statistics).) Muldrow concludes that, "[w]hen an

2

FBI agent's spouse does not work, that agent can more easily take a [temporary duty leave] or assignment to FBI [Headquarters] while the non-working spouse stays in the district with their minor children." (*Id.* at ¶ 99.) She also cites a 2021–22 FBI data chart, *see* (*Id.* at ¶¶ 90–94.), which shows that 16% of the FBI's field supervisors are women. (*Id.* at 54.)

After filing her first EEO complaint alleging disparate impact discrimination, Muldrow alleges that FBI retaliated and intentionally discriminated against her several more times. *See* (*Id.* at ¶¶ 81–85, 110–161.) She documented most of these incidents in four subsequent EEO complaints. (Doc. 66-2; Doc. 66-3; Doc. 66-4; Doc 66-5.)

Muldrow's Second Amended Complaint—the operative pleading—alleges intentional discrimination, disparate impact discrimination, and retaliation under Title VII. (Doc. 52 ¶¶ 162–183.) The Attorney General moves to dismiss Muldrow's disparate impact and retaliation claims and part of her intentional discrimination claim. (Doc. 63.)

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

3

not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

To defeat a Rule 12(b)(6) motion, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## III.   ANALYSIS

Muldrow advances three claims: intentional sex discrimination (Count I), disparate impact sex discrimination (Count II), and retaliation (Count III). The Attorney General moves to dismiss parts of Muldrow's intentional discrimination claim and the entirety of her disparate impact and retaliation claims. (Doc. 63.) The Court grants the motion as to the disparate impact claim because Muldrow fails to plausibly allege facts supporting Count II. But the Court does not reach the Attorney General's motion to dismiss with respect to Count I and Count III. Instead, it strikes Counts I and III as an impermissible shotgun pleading.

4

## A. Retaliation and Intentional Discrimination Claims

Although Muldrow is a federal employee, she advances the intentional discrimination and retaliation claims under 42 U.S.C. § 2000e-3, (Doc. 52 ¶¶ 163, 174), which is Title VII's anti-retaliation prohibition for private employers. Title VII's federal-sector provision resides in 42 U.S.C. § 2000e-16(a).

Section 2000e-3(a) provides, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." Yet Title VII's definition of "employer" explicitly says that the term "does not include the United States." 42 U.S.C. § 2000e(b). *Huff v. Buttigieg*, 42 F.4th 638, 645 (7th Cir. 2022) (alterations in original) (citations omitted), elaborates: "By express design, the private-sector provisions do not apply to federal employees; rather, they govern 'employer[s],' a term that 'does not include . . . the United States.'" *See also Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1198 (11th Cir. 2021) ("Because Babb is employed by the VA, we look to Title VII's federal-sector provision.").

Despite Title VII's clarity, Muldrow's complaint does not cite § 2000e-16. (Doc. 52.) She also does not reference § 2000e-16 in response to the Attorney General's motion to dismiss. (Doc. 66.) The Attorney General references § 2000e-16 in his motion to

5

dismiss, (Doc. 63 at 25–27, 30), but makes no assertion that the plaintiff fails to state a cause of action by citing an inapplicable portion of Title VII.

Muldrow's failure to cite § 2000e-16 produces a few problems. If the Court allows Muldrow's retaliation and discrimination claims to proceed to the merits, this case will be difficult to resolve correctly. With respect to intentional discrimination, Muldrow's claim cannot proceed under § 2000e-3 because that provision only addresses private sector retaliation. Precedent relevant to § 2000e-3 is irrelevant to an intentional discrimination claim arising under § 2000e-16. Relatedly, different standards govern what constitutes sufficiently adverse retaliation against a federal employee versus a private employee. Retaliation against a federal employee must be a "personnel action" to be sufficiently adverse, *see Babb*, 992 F.3d at 1209, while § 2000e-3(a) prohibits retaliation against a private employee in any form, even if it is not related to employment. *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62–67 (2006). For private employees, retaliation is "materially adverse" when it would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68. Because of the disparity between Title VII's private-sector provision and federal-sector provision, it is important that Muldrow bring her claim under the only applicable provision: § 2000e-16.

Although the Attorney General has not objected to these defects, the Court may dismiss Muldrow's intentional discrimination and retaliation claims *sua sponte*. Both

6

counts constitute an impermissible shotgun pleading. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006) ("Given the district court's proper conclusions that the complaint was a shotgun pleading and that plaintiffs failed to connect their causes of action to the facts alleged, the proper remedy was to order repleading *sua sponte*.")

To adequately adjudicate a dispute, the Court must have sufficient notice of exactly what the plaintiff is alleging. *See T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1543 n. 14 (11th Cir. 1985) (Tjoflat, J., dissenting). If the plaintiff cites a cause of action that is completely inapplicable to the facts underlying the dispute, the Court cannot adequately "determine which facts support which claims." *Id.* Moreover, if this action is appealed, the Court of Appeals will need sufficient notice of the plaintiff's claims. "[I]t is particularly important for district courts to undertake the difficult, but essential, task of attempting to narrow and define the issues from the earliest stages of the litigation." *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997). The Eleventh Circuit has criticized district courts that fail to fulfill this duty. *See e.g., Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997) ("[W]e note that the district court, acting on its own initiative, should have stricken appellants' complaints and instructed counsel to replead

7

their cases . . . .") Because Counts I and III of Muldrow's complaint incorrectly cite § 2000e-3, the Court strikes both counts and grants Muldrow leave to amend.

Lastly, this conclusion does not violate the Supreme Court's admonition that federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014). In *Johnson*, the plaintiffs' complaint incorrectly cited 42 U.S.C. § 1981 while attempting to allege a claim that was cognizable under 42 U.S.C. § 1983. *Johnson v. City of Shelby*, No. 2:10-cv-0036, slip ord. at 1 (N.D. Miss. Mar. 28, 2012). The district court dismissed the action with prejudice, *id.* at 2, and the Fifth Circuit affirmed. *Johnson v. City of Shelby*, 743 F.3d 59, 64 (5th Cir. 2013) (subsequent history omitted). The Supreme Court summarily reversed, but noted that "petitioners, on remand, should be accorded an opportunity to add to their complaint a citation to § 1983." 574 U.S. at 12. In other words, the district court did not err by recognizing the defect in the plaintiffs' complaint. The Supreme Court itself said that the plaintiffs should be given the opportunity to amend the defect in the complaint. *Id.* The problem was that the district court dismissed the plaintiffs'

action with no opportunity to cure the complaint's defects. Here, Muldrow retains that opportunity.

### B. Disparate Impact Claim

Unlike Muldrow's retaliation and intentional discrimination claims, Muldrow's disparate impact claim cites the correct statutory provisions. *See* (Doc. 52 ¶ 169.) Thus, the Court evaluates whether Muldrow plausibly alleges a disparate impact claim.

An employer commits disparate impact discrimination based on sex if their facially neutral employment practices have "an adverse, disproportionate impact" on women. *E.E.O.C. v. Joe's Stone Crab, Inc. (Joe's Stone Crab I)*, 220 F.3d 1263, 1274 (11th Cir. 2000); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1520 (11th Cir. 1995). Of course, the mere fact that significantly more men than women occupy a job is not sufficient to show disparate impact discrimination. *Joe's Stone Crab I*, 220 F.3d at 1276. To successfully allege disparate impact, Muldrow must allege facts that would make it plausible that a statistically significant disparity exists between the percentage of women who applied and were hired as field supervisors and the percentage of men who applied and were hired. *Id.* at 1275. Furthermore, even at the motion to dismiss stage, a plaintiff "usually" must cite "a statistical disparity" to plausibly allege a disparate impact claim. *Pouyeh v. UAB Dep't of Ophthalmology*, 625 F. App'x 495, 497 (11th Cir. 2015); *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 209 (2d Cir. 2020). "[T]he statistics must plausibly suggest that the

9

challenged practice *actually* has a disparate impact," and the statistics must also "focus on the disparity between appropriate comparator groups." *Mandala*, 975 F.3d at 210.

Muldrow's complaint might make a disparate impact "conceivable," but she does not cite facts making a disparate impact "plausible." *See Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570). Muldrow speculates how a facially neutral FBI policy might cause a disparity between male and female supervisors. (Doc. 52 at ¶¶ 86, 96–109) Muldrow's hypothesis is that fewer women are hired as field supervisors because the positions are given to agents who can gain experience at FBI headquarters, and working mothers are less likely than men to do that. (*Id.*) In theory, that fact pattern might be true, but conjecture without factual allegations that make the claim plausible cannot satisfy Muldrow's burden. For example, she never cites any FBI-specific, statistical evidence showing a disparity between the percentage of women who *applied* and were hired as supervisors and the percentage of men who applied and were hired for those same positions. Much of Muldrow's statistical evidence is based on a 2021–22 FBI data chart found in Exhibit 1 of her complaint. *See* (Doc. 52 ¶¶ 90–94). Exhibit 1 shows that there are 1,181 FBI field supervisors in total and only 191 of them are women (16%). (Doc. 52 at 54.) Additionally, Muldrow alleges that 19.8% of all FBI criminal investigators are women. (Doc. 52 ¶ 88). But Muldrow cites no data regarding the number of women who *applied*

10

to be a field supervisor, nor does she allege a rate at which women are hired in comparison to men. (*Id.*); *see Joe's Stone Crab I*, 220 F.3d at 1276.

Muldrow fails to plausibly allege a disparate impact claim because disparate impact liability cannot "be based solely on 'bottom line' statistical imbalances in an employer's workforce." *Joe's Stone Crab I*, 220 F.3d at 1276 (citing *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 992 (1988)). Thus, as alleged, Count II of Muldrow's complaint does not state a plausible claim for relief.

## IV.   CONCLUSION

Accordingly, the following is **ORDERED**:

1. Count I and Count III of Muldrow's Second Amended Complaint are **STRICKEN** with leave to amend.

2. The Attorney General's Motion to Dismiss is **GRANTED-IN-PART** as to Count II of Muldrow's Second Amended Complaint. Muldrow is granted leave to amended Count II.

3. By September 12, 2022, Muldrow may file a third amended complaint consistent with the directives of this Order. Failure to file a third amended complaint by this deadline will result in the dismissal of this action without further notice.

**ORDERED** in Tampa, Florida, on August 29, 2022.

*/s/ Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge